ROVNER, Circuit Judge,
dissenting.
As the majority points out, Chila would be entitled to benefits if she had marked limitations in two functional domains. See 20 C.F.R. § 416.926a(d). The administrative law judge here erroneously adopted the opinion of nontreating psychologist Dr. Larry Larrabee, denying that Chila had any marked functional limitations, over the opinion of treating neuropsychologist Dr. Peter Williamson, who opined that Chila had marked limitations in the domains of attending to and completing tasks and interacting and relating with others. Because substantial evidence does not support the ALJ’s reasons for crediting Dr. Larrabee’s opinion over that of Dr. Williamson, I would remand the case for further evaluation. See Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir.2003).
In discussing the relative merits of both doctors’ opinions, the majority glosses over the two unsubstantiated reasons that the ALJ gave for ignoring Dr. Williamson’s opinion. The ALJ first stated that Dr. Williamson and Chila did not have “a close treatment relationship.” But Dr. Williamson evaluated Chila three times over three years, and this “longitudinal picture” of Chila’s condition should have entitled Dr. Williamson’s opinion to greater weight than that of a nontreating source. See 20 C.F.R. § 416.927(d)(2)®. Second, the ALJ discounted Dr. Williamson’s opinion because it was based “primarily on the mother’s responses.” But this characterization misrepresents the record. In his evaluation report, Dr. Williamson expressly stated that he would treat the mother’s responses “very cautiously” because they were “extreme.” (A.R. 430.) More importantly, Dr. Williamson did not refer to the mother at all in the pertinent evaluation form in which he opined that Chila has two marked limitations. (Id. at 425-26.)
Nor does the majority acknowledge the ALJ’s unsupported reasons for crediting Dr. Larrabee’s opinion. The ALJ stated that he accepted Dr. Larrabee’s opinion because of “his credentials and his opportunity to review the entire record.” But Dr. Larrabee does not have particular credentials that warrant crediting his opinion over Dr. Williamson’s, especially since only Dr. Williamson personally evaluated Chila. See 20 C.F.R. § 416.927(d)(5). Moreover, Dr. Larrabee’s expertise, as he himself acknowledged, was circumscribed by the matter at issue. Even though he testified about the long-term trauma a very young sexual abuse victim would experience, he was unwilling to opine about the effects of abuse on Chila: such an opinion, he conceded on cross-examination, lies “outside of my area of expertise.” (A.R. 122, 132.)
The ALJ’s decision to rely on Dr. Larra-bee’s opinion is especially troubling because Dr. Larrabee did not substantiate his conclusions that Chila had no marked limitations. (A.R. 128-31.) When pressed by Chila’s representative, Dr. Larrabee *1085 cited Dr. Williamson’s reports as the basis for his conclusion. (Id. at 131.) But Dr. Williamson’s evaluation of Chila’s functional limitations differed substantially from Dr. Larrabee’s conclusion. Dr. Williamson pointed out, for instance, that Chila had marked limitations in attending to and completing tasks because “[r]ecent testing revealed significant deficits in attention under stressful and demanding conditions.” (Id. at 425.) He also noted that Chila had marked limitations in interacting and relating with others because Chila’s “anxiety and sensory defensiveness have a substantial impact on her social self regulation.” (Id. at 426.) Dr. Larrabee never accounted for these countervailing findings, and substantial evidence therefore does not support the ALJ’s decision to credit Dr. Larrabee’s conclusory opinion over Dr. Williamson’s well-supported one. See 20 C.F.R. § 416.927(d)(3).
Contrary to the majority’s conclusion, there is ample record evidence suggesting that Chila’s psychological impairments were severe. For example, Chila’s psychiatrist noted that Chila frequently experienced anxiety attacks at school, (A.R. 478, 480), and engaged in compulsive behaviors that included picking at her scalp until she had bleeding sores, (id. at 449, 457-58). There is also evidence that Chila’s psychological impairments interfered with her ability to interact and relate with others. For example, although the majority believes that Chila’s school reports depict “a normal schoolgirl,” Chila’s most recent school report shows that she “rarely” demonstrated self-control, solved conflicts appropriately, or cooperated with others. (Id. at 266.) A consulting psychiatrist characterized Chila’s “social phobia” as “significant.” (Id. at 449.) There is also evidence that her impairments limited her ability to attend to and complete tasks. Chila’s most recent school report describes her failure to timely complete assignments as “really affecting Chila’s progress!” (Id. at 266.) Her psychiatrist noted Chila’s “excessive distractibility” and “difficulty following through.” (Id. at 456.) Given this record, Chila deserves to have an ALJ decide whether her serious psychological impairments render her disabled for reasons that are supported by substantial evidence.